(No. 5720.   Decided August 1, 1905.)

THE STATE OF WASHINGTON, *on the Relation of W. H. Pelton, Plaintiff,* v. E. W. ROSS, *as Commissioner of Public Lands, Respondent,* J. M. COLEMAN, *Intervener.*[1]

PROHIBITION — ORIGINAL JURISDICTION OF SUPREME COURT — MANDATE—STATE LAND COMMISSIONER—SCHOOL LANDS—LEASE. The only function of an original writ of prohibition by the supreme court being the restraint of judicial or quasi-judicial power, the supreme court has no original jurisdiction to issue a writ to prevent the state land commissioner from leasing certain lands and compelling him to advertise a lease of the same for sale at public auction, notwithstanding the writ was denominated a mandate, since it is in effect a writ of prohibition as to acts not judicial in character.

SAME. The injunctive feature cannot be sustained as a necessary accompaniment of the main relief by mandamus.

PUBLIC LANDS—STATE LAND COMMISSIONER—POWERS—LEASE—INTEREST OF APPLICANT—MANDAMUS. As the commissioner of public lands acts upon applications to lease lands at his own discretion, and is under no obligation to offer lands for lease, mandamus to compel him to do so cannot be maintained by an applicant having no other interest in the land than that of the general public, such applicant not being a party beneficially interested.

Application filed in the supreme court June 10, 1905, for a writ restraining the commissioner of public lands from

[1]Reported in 81 Pac. 865.

executing a lease of tide lands, and requiring him to submit the lease to sale at public auction. Writ denied.

*Hughes, McMicken, Dovell & Ramsey* and *Vance & Mitchell,* for relator. The supreme court has original jurisdiction to grant the writ. *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067; *State ex rel. Winston v. Rogers,* 21 Wash. 206, 57 Pac. 801. The relator's application gives him a definite interest apart from that of the public, sufficient to maintain the proceedings. *Birmingham v. Cheetham,* 19 Wash. 657, 54 Pac. 37; *Tacoma v. Bridges,* 25 Wash. 221, 65 Pac. 186; *Rand, McNally & Co. v. Hartranft,* 29 Wash. 591, 70 Pac. 77. His interest is at least equal to that of a bidder on a public contract. *Times Printing Co. v. Seattle,* 25 Wash. 149, 64 Pac. 940; *Times Printing Co. v. Everett,* 9 Wash. 518, 37 Pac. 695, 43 Am. St. 865; *Norton v. Roslyn,* 10 Wash. 44, 38 Pac. 878; *Moran v. Thompson,* 20 Wash. 525, 56 Pac. 29. The statute contemplates an opportunity for public bidding. Laws 1899, p. 77, § 1; 1 Bouvier Law Dict., 239. The commissioner was not bound in law or morals to execute the lease arranged. Bal. Code, § 2198. It was such an abuse of discretion to refuse the higher bid as to amount to fraud in law, for which we find a parallel in the tax valuation cases. *Templeton v. Pierce County,* 25 Wash. 377, 65 Pac. 553; *Landes Estate Co. v. Clallam County,* 19 Wash. 569, 53 Pac. 670; *Whatcom County v. Fairhaven Land Co.,* 7 Wash. 101, 34 Pac. 563; *State ex rel White v. Board of State Land Com'rs,* 23 Wash. 700, 63 Pac. 532. A preference right to re-lease at the end of the term, at private sale and without competition, would violate § 11 of the enabling act, forbidding such lease for a period of more than five years, especially as applied to assignees. *Hazelwood v. Rogan,* 95 Tex. 295, 67 S. W. 80. It also grants special privileges. Const., art. 1, § 13. Any disposition for less than the "full market value" is unconstitutional. Laws 1899,

p. 77, § 1; Const., art. 1, § 16; *State ex rel. Bussell v. Bridges,* 23 Wash. 82, 62 Pac. 449.

*The Attorney General* and *A. J. Falknor, Assistant,* for respondent. The relator's remedy is by appeal. *State ex rel. White v. Board of State Land Com'rs,* 23 Wash. 700, 63 Pac. 532; *Wilkes v. Hunt,* 4 Wash. 100, 29 Pac. 830. The supreme court has no original jurisdiction of the proceeding. *Winsor v. Bridges,* 24 Wash. 540, 64 Pac. 780; *State ex rel. Bussell v. Bridges,* 30 Wash. 268, 70 Pac. 506; *McNaught-Collins Imp. Co. v. Atlantic etc. Pile & Timber Preserving Co.,* 36 Wash. 669, 79 Pac. 484. An applicant for a lease acquires no vested rights in the land. *Allen v. Forrest,* 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606; *Frisbie v. Whitney,* 9 Wall. 187, 19 L. Ed. 668; *Campbell v. Wade,* 132 U. S. 34, 10 Sup. Ct. 9, 33 L. Ed. 240. The rights of improvers are carefully guarded in this state. *Wilkes v. Hunt,* 4 Wash. 100, 29 Pac. 830; *Pearson v. Ashley,* 5 Wash. 169, 31 Pac. 410; *Wilkes v. Davies,* 8 Wash. 112, 35 Pac. 611, 23 L. R. A. 103; *Hart Lumber Co. v. Rucker,* 15 Wash. 456, 46 Pac. 728. The market value is such a sum as the property is worth in the market to persons generally. Cent. Dict., "Market Value;" *Bullard v. Stone,* 67 Cal. 477, 8 Pac. 17; *Little Rock Junction R. Co. v. Woodruff,* 49 Ark. 381, 4 Am. St. 51; *Wilder's Steamship Co. v. Brigantine Lurline,* 11 Hawaii 83; *Sanford v. Peck,* 63 Conn. 486, 27 Atl. 1057.

*Graves, Palmer, Brown & Murphy,* for intervener. The supreme court has no original jurisdiction to grant a writ of prohibition to the state land commissioner. *State ex rel. White v. Board of State Land Com'rs,* 23 Wash. 700, 63 Pac. 532; *Winsor v. Bridges,* 24 Wash. 540, 64 Pac. 780; *McNaught-Collins Imp. Co. v. Atlantic etc. Pile etc. Co.,* 36 Wash. 669, 79 Pac. 484; *State ex rel. Bussell v. Bridges,* 30 Wash. 268, 70 Pac. 506. The application does not confer

any interest or right in the land. *Allen v. Forrest,* 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606; *Frisbie v. Whitney,* 9 Wall. 187, 19 L. Ed. 688; *Campbell v. Wade,* 132 U. S. 34, 10 Sup. Ct. 9, 33 L. Ed. 240; *State ex rel. Mariner v. Grey,* 4 Wis. 396; *State ex rel. McIndoe v. Commissioners of School etc. Lands,* 6 Wis. 334; *Gough v. Dorsey,* 27 Wis. 119; *Emblem v. Lincoln Land Co.,* 94 Fed. 710; *Parker v. Lynch,* 7 Okl. 631, 56 Pac. 1082. There is a remedy by appeal, and mandamus will not lie. 3 Bal. Code, § 2142a, Laws 1901, p. 98; *State ex rel. Barbo v. Hadley,* 20 Wash. 520, 56 Pac. 29; *State ex rel. McIntyre v. Superior Court,* 21 Wash. 108, 57 Pac. 352; *State ex rel. Vincent v. Benson,* 21 Wash. 571, 58 Pac. 1066; *State ex rel. Fuller v. Superior Court,* 31 Wash. 96, 71 Pac. 722; *State ex rel. Young v. Denney,* 34 Wash. 56, 74 Pac. 1021. A private citizen must show a special interest in order to enjoin a public official. *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067; *Birmingham v. Cheetham,* 19 Wash. 657, 54 Pac. 37; *Tacoma v. Bridges,* 25 Wash. 221, 55 Pac. 181; *Rand, McNally & Co. v. Hartranft,* 29 Wash. 591, 70 Pac. 77. The courts will not review the decision of the commissioner in determining the market value and the character of the improvements. 26 Am. & Eng. Ency. Law (2d ed.), 385; 23 Id., 371; *Rogers v. DeCambra,* 132 Cal. 502, 60 Pac. 863, 64 Pac. 894; *DeCambra v. Rogers,* 189 U. S. 119, 23 Sup. Ct. 519, 47 L. Ed. 734; *Wiseman v. Eastman,* 21 Wash. 163, 57 Pac. 398; *Ramsay v. Tacoma Land Co.,* 31 Wash. 351, 71 Pac. 1024; *Gale v. Best,* 78 Cal. 235, 20 Pac. 550, 12 Am. St. 44; *Potter v. Randolph,* 126 Cal. 458, 58 Pac. 905; *Peyton v. Desmond,* 129 Fed. 1; *Sage v. Maxwell,* 91 Minn. 527, 99 N. W. 42; *Graham v. Great Falls Water Power etc. Co.* (Mont.), 76 Pac. 808; *Robertson v. State Land Board,* 42 Ore. 183, 70 Pac. 614; *McFadden v. Mountain View Min. & Mill Co.,* 97 Fed. 670; *United States v. Mackintosh,* 85 Fed. 333; *Cooke v. Blakeley,* 6 Kan. App. 707, 50 Pac. 981. The intervener's contract was accepted and complete. *Colorado Fuel & Iron Co. v.*

*Board of Land Com'rs,* 14 Colo. App. 84, 60 Pac. 367; *Russ v. Telfener,* 166 U. S. 720, 17 Sup. Ct. 998, 41 L. Ed. 1177. The statute authorizes the assignment. 3 Bal. Code, § 2161, Laws 1903, p. 116; 3 Bal. Code, § 2192, Laws 1903, p. 113.

CROW, J.—Relator, in his brief, says: "This is an application for a mandatory injunction, by which it is sought to have the respondent restrained from executing a certain contract to certain described lands, and requiring him to submit the lease of said lands to public auction, and dispose of the lease to the highest bidder therefor." From this statement it will be observed that, by this application, the primary relief sought is to prevent the state land commissioner from performing certain threatened acts, and thereafter to command him to do or perform certain other acts alleged to appertain to his office or duty.

On June 1, 1901, the State of Washington leased one hundred and twenty acres of school land in Kitsap county to one Robert J. Fisher, for five years, at an annual rental of $12. By subsequent assignments said lease was transferred to J. M. Coleman, intervener herein. On January 13, 1905, said J. M. Coleman, as such assignee, applied in writing for a re-lease of said land for five years from June 1, 1905, at $12 per annum rental, stating that he desired said lands for camping purposes. Although said application was made in the name of J. M. Coleman, it was signed by one L. J. Coleman, his son. L. J. Coleman claims to be the attorney in fact of said J. M. Coleman, and says that all acts performed by him, whether in his own name or in that of J. M. Coleman, in reference to said land, were performed as such attorney in fact.

After said application for re-lease by said J. M. Coleman, the land commissioner's office caused said land to be appraised by one Charles A. Billings, who reported its annual rental value to be $30. On May 25, 1905, after the return of said appraisement, said L. J. Coleman made a second ap-

plication for a re-lease for five years, claiming improvements to the value of $120. With reference to said second application, respondent shows that, at the time of the filing of the same, an offer of $30 annual rent was made by said L. J. Coleman to meet the appraised valuation, and the first year's rental was deposited.

On May 31, 1905, the relator made written application to the state land commissioner to lease said land for five years, offering to pay a rental of one dollar per acre, or $120 per annum. At the time of making this application, he also deposited with the state land commissioner $130, of which $120 was for the first year's rental and $10 to cover the expense of advertising, etc. At the time of making said written application, relator also filed a written protest or statement, alleging that the improvements mentioned in the L. J. Coleman application had not been made in good faith; that their erection had been commenced by him on Sunday, May 28, 1905, just prior to the expiration of the existing lease, for the sole purpose of enabling him, as prior lessee, to claim ownership of improvements upon said land and avail himself of the benefits of 3 Bal. Code, § 2160, Laws 1899, p. 77.

Respondent by letter promptly notified said L. J. Coleman of said application and protest, and in so doing, said:

"It will be necessary for you to meet this bid, under the interpretation of the law and the practice of this office. Upon receipt of an additional $90, which together with $30 now on deposit in this office, covers the amount of the bid of Mr. Pelton, also the reply to the protest, the matter will be given consideration, and you will be notified of the result."

Respondent also took the precaution of seeking and acting upon the advice of the attorney general. Said L. J. Coleman immediately remitted to the state land commissioner the additional $90, and also filed his affidavit relative to the improvements, controverting the statements of relator, without stating, however, when said improvements were made.

Thereupon, after examination and consideration of the affidavits and applications, and having satisfied himself that said improvements were *bona fide* and such as entitled Mr. Coleman as a prior lessee to a preference right to re-lease, and deeming said annual rental of $120 sufficient and for the best interests of the state, respondent accepted said offer of $120, notified the attorney of said J. M. Coleman, and also the attorneys of said relator of his action, and caused to be recorded in volume 2 of the lease records of his office the following: "Kitsap County. Lots 1 and 2, Sec. 36, Tp. 21, 2 East, area 120 acres, name of lessee, J. M. Coleman, postoffice address Seattle, Washington, date June 1, 1905, amount per annum $120;" and indicated the lease as No. 7144, and caused original and duplicate leases to be prepared ready for signature.

Thereafter, but prior to the signing or delivery of said lease, on June 7, 1905, respondent received from one W. P. Trimble, not a party to this proceeding, the following telegram: "For five-year lease upon lots 1 and 2, Sec. 36, Tp. 24, north of range 2 east, I will give $1,200 per year rent, and am prepared to raise this if it is met." On June 10, 1905, said W. P. Trimble presented a written application to lease said property for five years at $1,200 per annum, accompanying the same by a check for $1,200 for the first year's rental. In response to said telegram and application, respondent by letter notified said Trimble of his previous action in the premises and, *inter alia,* said: "The state feels that, since it has gone so far as it has in re-leasing, it cannot honorably recede from its position. We therefore respectfully return your check and reject your application. The office, however, will defer action for a reasonable time so that you may take such action as you wish." As the merits of this case will not be discussed, it is only justice for us to state that no suggestion of improper or fraudulent conduct on the part of the state land commissioner has been made by any of the parties; nor does anything appear which would sub-

ject him to criticism, the entire record showing that he has
constantly endeavored to act honestly and in good faith.

The state land commissioner having given to said W. P.
Trimble the notice above mentioned, and having temporarily
preserved the status so that the parties might take any action
they deemed proper, the relator, on June 23, 1905, filed this
application and, on the hearing, said J. M. Coleman was, by
consent, permitted to intervene.  Respondent and the inter-
vener have each submitted a demurrer and answer to the
affidavit of relator.  The demurrers present several questions,
of which we will consider two:  (1) That this court has no
original jurisdiction of this proceeding; (2) that the relator
has no right or authority to institute this proceeding.

(1)  While the relator seeks to invoke the original juris-
diction of this court, and in so doing has ostensibly applied
for a writ of mandate, we will first consider the objects
sought to be obtained by said writ, in order that its true
character may be determined.  It is evident that the primary
relief sought by relator would, if granted, in substance amount
to an order either prohibiting or enjoining respondent from
delivering the proposed re-lease to the intervener Coleman.
In other words, it is sought by an original application here
to secure some writ by which the re-leasing of said land to
the intervener may be prevented.  Unless some steps are
taken to prevent such re-leasing, it would be idle to enter-
tain the idea that this court could be called upon to issue
a writ of mandamus directing the state land commissioner
to advertise a lease of said land for sale at public auction
to the highest bidder.  Before any such order could be made,
the re-lease or pretended re-lease to Coleman should most
certainly be disposed of or prevented.  We therefore think,
from the primary relief sought by relator herein, that the
writ he asks is not one of mandamus, but is in the nature
of a writ of prohibition directed to the state land commis-
sioner, forbidding him to do an act which is not judicial
in its character.  While it is true that this court has original

jurisdiction to issue writs of prohibition in certain cases, it has been repeatedly held by us that the only function of such a writ is the restraint of unauthorized judicial and quasi-judicial power. *State ex rel. White v. Board of State Land Com'rs,* 23 Wash. 700, 63 Pac. 532; *Winsor v. Bridges,* 24 Wash. 540, 64 Pac. 780. The acts of respondent which relator seeks to prevent are not judicial or quasi-judicial, as in re-leasing to Coleman he acts only in a ministerial or executive capacity. If the relator desires to prohibit or enjoin respondent from re-leasing to Coleman, and is entitled to do so, he should proceed in the superior court, as we are without original jurisdiction to grant such relief by a writ which in its effect would be a writ of prohibition, although relator undertakes to give it some other title.

It is suggested by relator, however, that the original injunctive relief sought here is merely a necessary accompaniment of the main relief which can be granted by a writ of mandamus. We do not think this contention can be sustained. If we eliminate all idea of prohibitive or injunctive relief herein, it would be absurd for this court to issue a writ of mandamus against the state land commissioner, compelling him to lease lands which have already been re-leased or the title to which would be, at least, clouded by an existing pretended re-lease. As above suggested, relator primarily seeks to prohibit or enjoin respondent from doing certain acts. This he cannot do by a writ of mandamus. "Mandamus will not lie to undo what has already been done. Mandamus is a writ to compel and not to restrain action." 19 Am. & Eng. Ency. Law (2d ed.), 743. See, *Legg v. Mayor etc. of Annapolis,* 42 Md. 203; *Dunklin County v. District County Court,* 23 Mo. 449. In the case last mentioned, which is quite similar in principle to this, the supreme court of Missouri says:

"The writ of mandamus is in form a command in the name of the state, directed to some tribunal, corporation, or public officer, requiring them to do some particular thing

therein specified, and which the court has previously determined that it is the duty of such tribunals or other person to perform. . . . It does not lie to correct the errors of inferior tribunals by annulling what they have done erroneously, nor to guide their discretion, nor to restrain them from exercising power not delegated to them; but it is emphatically a writ requiring the tribunal or person to whom it is directed, to do some particular act appertaining to their public duty, and which the prosecutor has a legal right to have done."

"The writ of mandamus is the counterpart of the writ of prohibition, and is so designated in some states by statute. Mandamus is a legal remedy to compel action in accordance with legal duty, while prohibition is a legal remedy to restrain action in excess of legal authority." 19 Am. & Eng. Ency. Law (2d ed.), 721, 722.

See, also, 23 Am. & Eng. Ency. Law (2d ed.), 196; Bal. Code, § 5769; *State ex rel. Rochford v. Superior Court,* 4 Wash. 30, 29 Pac. 764. Relator claims the action of respondent in re-leasing to the intervener is an act in excess of legal authority, and he seeks to prohibit such action. If it be conceded that he also seeks a writ to compel action by respondent in accordance with an alleged legal duty, then in one and the same proceeding he is demanding from this court an original writ having two functions, one of which is the counterpart or converse of the other. We think this cannot be done.

(2) It is contended by the respondent and the intervener, we think properly, that the relator has not a sufficient special interest in the land in controversy to authorize him to apply to this court for a writ of mandamus compelling respondent to offer a lease of said land for sale to the highest bidder at public auction. It is true, he has filed an application which has been rejected, and that respondent has in effect refused to offer a lease of said land for sale at public auction; but the mere filing of a written application for a lease of public lands does not confer upon the applicant any interest in the

land other than that of the general public.  *Allen v. Forrest,* 8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606; *Frisbie v. Whitney,* 9 Wall. 187; *Campbell v. Wade,* 132 U. S. 34, 10 Sup. Ct. 9; *State ex rel. Mariner v. Gray,* 4 Wis. 380.

Relator contends that, under the constitution and laws of this state as applied to the facts herein, the intervener Coleman has no preference right to a re-lease.  While we now express no opinion as to Coleman's rights in that regard, still were we to concede the relator's position to be correct, what would be the result?  The land would be then subject to original lease only.  Bal. Code, §§ 2149-2156.  These sections impose upon respondent no immediate official obligation or duty to offer such land for lease even after applications are made.  He exercises his own judgment in the premises, acting as he deems advisable.  Bal. Code, § 2150.  When such lands have been actually offered, he may reject any or all bids.  Bal. Code, § 2156.  We fail to see, therefore, how the relator has secured any special right or interest in the land in question entitling him to a writ of mandamus, even though it be conceded that he is seeking relief by mandamus and not by prohibition.  A writ of mandamus can be issued only on affidavit on the application of the party beneficially interested.  Bal. Code, § 5756; Spelling, Injunctions etc. (2d ed.), §§ 1369, 1370.

It is ordered that the relator's application be dismissed.

Mount, C. J., Root, Hadley, Rudkin, and Dunbar, JJ., concur.

Fullerton, J., took no part.